**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

*In re Food for the Poor, Inc.,*
*Data Breach Litigation*                    **CASE NO: 0:25-CV-60973-RS**

                                        *Consolidated with Case No. 25-CV-60976-RS*

_____/

**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Plaintiffs John Cunnigham and Lisa Capps ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint ("Complaint") against Defendant Food for the Poor, Inc. ("Defendant"), and allege upon personal knowledge, information and belief, and counsel's investigation as follows.

**NATURE OF THE ACTION**

1.      Plaintiffs bring this class action against Defendant for its failure to properly secure and safeguard Plaintiffs' and at least 52,286 Class Members' personally identifiable information ("PII") including, Social Security numbers, passport numbers, financial account number/information, and protected health information ("PHI"), including health information (collectively, "Private Information").[1]

2.      On or about September 2, 2024, through September 6, 2024, hackers targeted and accessed Defendant's network systems and stole Plaintiffs' and Class Members' sensitive, confidential Private Information stored therein, causing widespread injuries to Plaintiffs and Class Members ("Data Breach").

3.      Defendant is a charitable organization engaged in the collection and distribution of money, food, clothing, medicine, and other goods to improve the health, economic, and social

_____

[1] *See* Notice Letters sent to Plaintiffs by Defendant (Apr. 4, 2025), attached hereto as ***Exhibit A***.

conditions of indigent poor throughout the world.[2] It represents that it has provided billions worth of aid.

4.      On information and belief, Plaintiffs and Class Members are current and former employees, family members of employees, or individuals who made donations to Defendant who, in order to obtain and facilitate employment benefit programs from Defendant or to make charitable donations to Defendant, were and are required to entrust Defendant with their sensitive, non-public Private Information. Defendant could not perform its operations or provide its services without collecting Plaintiffs' and Class Members' Private Information.

5.      Businesses like Defendant that handle Private Information owe the individuals to whom that data relates a duty to adopt reasonable measures to protect such information from disclosure to unauthorized third parties, and to keep it safe and confidential. This duty arises under contract, statutory and common law, industry standards, representations made to Plaintiffs and Class Members, and because it is foreseeable that the exposure of Private Information to unauthorized persons—and especially hackers with nefarious intentions—will harm the affected individuals, including but not limited to by the invasion of their private health matters.

6.      Taking reasonable, standard precautions against cybercrime and data breaches is a fundamental duty of doing business in the modern age—especially for businesses that profit from analyzing and processing Private Information. By collecting, maintaining, and profiting from Plaintiffs' and Class Members' Private Information, Defendant was required by law to exercise reasonable care and comply with industry and statutory requirements to protect that information—and it failed to do so.

7.      Among myriad industry standards and statutes for protection of sensitive

---

[2] https://foodforthepoor.org/wp-content/uploads/FFTP-23-Consolidated-FS-Long-Version.pdf

information, health care information is specifically governed by federal law under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and its implementing regulations. HIPAA requires entities including Defendant to take appropriate technical, physical, and administrative safeguards to secure the privacy of PHI, establishes national standards to protect PHI, and requires timely notice of a breach of unencrypted PHI.

8.   Defendant breached these duties owed to Plaintiffs and Class Members by failing to safeguard their Private Information it collected and maintained, including by failing to implement industry standards for data security to protect against, detect, and stop cyberattacks, which failures allowed criminal hackers to access and steal at least 52,286 individuals' Private Information from Defendants care.

9.   According to Defendant's notice of the Data Breach, on September 6, 2024, Defendant discovered unusual activity on its network. The ensuing investigation revealed that during the event an unknown, unidentified hacker accessed and exfiltrated files containing Plaintiffs' and Class Members' Private Information from Defendant's network systems.

10.   Although the Data Breach took place on or about September 2, 2024, through September 6, 2024, Defendant failed to notify affected individuals that their Private Information was compromised until approximately April 4, 2025 (seven months)—diminishing Plaintiffs' and Class Members' ability to timely and thoroughly mitigate and address the increased, imminent risk of identity theft and other harms the Data Breach caused.

11.   Defendant failed to adequately protect Plaintiffs' and Class Members' Private Information, and failed to even encrypt or redact this highly sensitive data. This unencrypted, unredacted Private Information was compromised due to Defendant's negligent and/or careless acts and omissions and its utter failure to protect its customers' sensitive data.

12.     Defendant maintained the Private Information in a reckless manner. In particular, Private Information was maintained on and/or accessible from Defendant's network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiffs' and Class Members' Private Information was a known risk to Defendant, and thus Defendant knew that failing to take reasonable steps to secure the Private Information left it in a dangerous condition.

13.     Hackers targeted and obtained Plaintiffs' and Class Members' Private Information from Defendant's network because of the data's value in exploiting and stealing identities. As a direct and proximate result of Defendants' inadequate data security and breaches of its duties to handle Private Information with reasonable care, Plaintiffs' and Class Members' Private Information has been accessed by hackers and exposed to an untold number of unauthorized individuals. The present and continuing risk to Plaintiff and Class Members as victims of the Data Breach will remain for their respective lifetimes.

14.     The harm resulting from a cyberattack like this Data Breach manifests in numerous ways including identity theft and financial fraud, and the exposure of an individual's Private Information due to a data breach ensures that the individual will be at a substantially increased and certainly impending risk of identity theft crimes compared to the rest of the population, potentially for the rest of his or his life. Mitigating that risk, to the extent it is even possible to do so, requires individuals to devote significant time and money to closely monitor their credit, financial accounts, and email accounts, and take several additional prophylactic measures.

15.     As a result of the Data Breach, Plaintiffs and Class Members suffered and will continue to suffer concrete injuries in fact, including but not limited to (a) financial costs incurred mitigating the materialized risk and imminent threat of identity theft; (b) loss of time and loss of

productivity incurred mitigating the materialized risk and imminent threat of identity theft; (c) actual identity theft and fraud; (d) financial costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) deprivation of value of their Private Information; (g) loss of privacy; (h) emotional distress including anxiety and stress in with dealing with the Data Breach; and (i) the continued risk to their sensitive Private Information, which remains in Defendant's possession and subject to further breaches, so long as Defendant fails to undertake adequate measures to protect the customer data it collects and maintains.

16.     To recover from Defendant for these harms, Plaintiffs, on their own behalf and on behalf of the Class as defined herein, bring claims for negligence, breach of implied contract, and declaratory relief to address Defendant's inadequate safeguarding of Plaintiffs' and Class Members' Private Information in its care.

17.     Plaintiffs and Class Members seek damages and equitable relief requiring Defendant to (a) disclose the full nature of the Data Breach and types of Private Information exposed; (b) implement data security practices to reasonably guard against future breaches; and (c) provide, at Defendant's expense, all Data Breach victims with lifetime identity theft protection services.

## **PARTIES**

18.     Plaintiff John Cunningham is an adult individual who at all relevant times has been a citizen and resident of Broward County, Florida.

19.     Plaintiff Lisa Capps is an adult individual who at all relevant times has been a citizen and resident of Coconut Creek, Florida.

20.     Defendant Food for the Poor, Inc. is a Florida corporation with its headquarters and principal place of business located at 6401 Lyons Road, Coconut Creek, Florida 33073.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is more than 100 and at least one member of the Class defined below is a citizen of a different state that is diverse from Defendant's citizenship.[3] Thus, minimal diversity exists under 28 U.S.C. § 1332 (d) (2) (A).  Defendant has its principal place of business located in this District.

22.     This Court has personal jurisdiction over Defendant because Defendant is registered to do business and maintains its principal place of business in this District.

23.     Venue is proper in this Court because Defendant's principal place of business is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL BACKGROUND

**A. Defendant Owed Duties to Adopt Reasonable Data Security Measures for Private Information it Collected and Maintained.**

24.     Defendant is an international relief and development organization that provides food, medicine, shelter, and other aid to those in need.

25.     Defendant collects and maintains Private Information in its computer systems.

26.     As a condition and in exchange of employment-related benefits from Defendant or making donations to Defendant, Plaintiffs and Class Members were required to entrust Defendant with highly sensitive Private Information, including Social Security numbers, passport numbers,

---

[3] For example, Defendant reported that residents of Maine are victims of the Data Breach. *See* https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/e2014c3c-5f54-436e-8377-5531c3026507.html

financial account number/information, and/or health information.

27.     In exchange for receiving Plaintiffs' and Class Members' Private Information, Defendant promised to safeguard the sensitive, confidential data and use it only for authorized and legitimate purposes, and to delete such information from its systems once there was no longer a need to maintain it.

28.     The information Defendant held in its computer networks at the time of the Data Breach included the unencrypted Private Information of Plaintiffs and Class Members.

29.     At all relevant times, Defendant knew it was storing and using its networks to store and transmit valuable, sensitive Private Information belonging to Plaintiff and Class Members, and that as a result, its systems would be attractive targets for cybercriminals.

30.     Defendant also knew that any breach of its information technology network and exposure of the data stored therein would result in the increased risk of identity theft and fraud for the individuals whose Private Information was compromised, as well as intrusion into those individuals' highly private medical information.

31.     Upon information and belief, Defendant made promises and representations to its employees and employees' beneficiaries and charitable donors, including Plaintiffs and Class Members, that the Private Information collected from them as a condition of being employment benefit recipients or donors would be kept safe, confidential, that the privacy of that information would be maintained, and that Defendant would delete any sensitive information after it was no longer required to maintain it.

32.     Plaintiffs and Class Members relied on these promises from Defendant, a sophisticated charitable entity and benefit service provider for its employees, to implement reasonable practices to keep their sensitive Private Information confidential and securely

maintained, to use this information for necessary purposes only and make only authorized disclosures of this information, and to delete Private Information from Defendant's systems when no longer necessary for its legitimate business or employee-benefit management service purpose.

33.     But for Defendant's promises to keep Plaintiffs' and Class Members' Private Information secure and confidential, Plaintiffs and Class Members would not have entrusted their Private Information to Defendant. Consumers and employees in general demand security to safeguard their Private Information, especially when sensitive financial information is involved.

34.     Based on the foregoing representations and warranties and to obtain services from Defendant, Plaintiffs and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its promises and obligations to keep such information confidential and protected against unauthorized access.

35.     Plaintiffs and Class Members value the confidentiality of their Private Information and demand security to safeguard their Private Information. To that end, Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

36.     Defendant derived economic benefits from collecting Plaintiffs' and Class Members' Private Information. Without the required submission of Private Information, Defendant could not perform its services.

37.     By obtaining, using, and benefiting from Plaintiffs' and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting that Private Information from unauthorized access and disclosure.

38.     Defendant had and has a duty to adopt reasonable measures to keep Plaintiffs' and Class Members' Private Information confidential and protected from involuntary disclosure to third parties, and to audit, monitor, and verify the integrity of its IT networks, and train employees

with access to use adequate cybersecurity measures.

39.     Additionally, Defendant had and has obligations created by the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45 ("FTC Act"), common law, contract, industry standards, and representations made to Plaintiffs and Class Members, to keep their Private Information confidential and protected from unauthorized disclosure. Defendant failed to do so.

**B. Defendant Failed to Adequately Safeguard Plaintiffs' and Class Member's Private Information, resulting in the Data Breach.**

40.     On or about April 4, 2025, Defendant began sending Plaintiffs and other Data Breach victims letters informing them of the Data Breach ("Notice Letters").

41.     The Notice Letters generally inform as follows, in part:

On September 6, 2024, we identified unusual activity in our network and immediately began an investigation. The investigation determined there was unauthorized access to a portion of our network between September 2, 2024, and September 6, 2024. Therefore, we conducted a review of the contents of the network to determine the type of information contained therein and to whom the information related. On March 7, 2025, we completed our review and began locating address information for affected individuals. The type of information identified in our review included your name and one or more of the following: [   ].

In response to this incident, we changed network passwords, notified law enforcement, and reviewed our policies and procedures. In an abundance of caution, we are providing potentially affected individuals access to complimentary credit monitoring and identity protection services. We encourage you to enroll in the services we are making available to you. Information about how to enroll in these services along with additional resources available to you are included in the enclosed Steps You Can Take to Help Protect Your Information. We also encourage you to remain vigilant against incidents of identity theft and fraud by reviewing your credit reports/account statements and explanation of benefits forms for suspicious activity and to detect errors.[4]

42.     Omitted from the Notice Letters were the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a

---

[4] See **Exhibit A**.

breach does not occur again. To date, these critical facts have not been explained or clarified to Plaintiffs and Class Members, who retain a vested interest in ensuring that their Private Information is protected.

43.     Thus, Defendant's purported "disclosure" amounts to no real disclosure at all, as it fails to inform Plaintiffs and Class Members of the Data Breach's critical facts with any degree of specificity. Without these details, Plaintiffs' and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

44.     To make matters worse, although the Data Breach occurred on September 6, 2024, Defendant waited until April 4, 2025 (seven months), before notifying the public or affected individuals about it, diminishing Plaintiffs' and Class Members' ability to timely and thoroughly mitigate and address harms resulting from their Private Information's unauthorized disclosure.

45.     Plaintiffs' and Class Members' Private Information was targeted, accessed, and stolen by cybercriminals in the Data Breach. Criminal hackers accessed and acquired confidential files containing Plaintiffs' and Class Members' Private Information from Defendant's network systems, where they were kept without adequate safeguards and in unencrypted form.

46.     Defendant could have prevented this Data Breach by properly training personnel, securing account access through measures like multifactor authentication ("MFA") and recurring forced password resets, and/or securing and encrypting the files and file servers containing Plaintiffs' and Class Members' Private Information, but failed to do so.

47.     As the Data Breach evidences, Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive Private Information it collected and maintained from Plaintiffs and Class Members, such as MFA, standard monitoring and altering techniques, encryption, or deletion of information when it is no longer needed. These failures by

Defendant allowed and caused cybercriminals to target Defendant's network and exfiltrate files containing Plaintiffs and Class Member's Private Information.

48.     Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing Plaintiffs' and Class Members' Private Information, using controls like limitations on personnel with access to sensitive data and requiring MFA for access, training its employees on standard cybersecurity practices, and implementing reasonable logging and alerting methods to detect unauthorized access.

49.     For example, if Defendant had implemented industry standard logging, monitoring, and alerting systems—basic technical safeguards that any PHI and/or PII-collecting company is expected to employ—then cybercriminals would not have been able to perpetrate malicious activity in Defendant's network systems for the period it took to carry out the Data Breach, including the reconnaissance necessary to identify where Defendant stored Private Information, installation of malware or other methods of establishing persistence and creating a path to exfiltrate data, staging data in preparation for exfiltration, and then exfiltrating that data outside of Defendant's system without being caught.

50.     Defendant would have recognized the malicious activities detailed in the preceding paragraph if it bothered to implement basic monitoring and detection systems, which then would have stopped the Data Breach or greatly reduced its impact.

51.     Defendant's tortious conduct and breach of contractual obligations, as detailed herein, are evidenced by its failure to recognize the Data Breach until cybercriminals had already accessed Plaintiffs' and Class Members' Private Information, meaning Defendant had no effective means in place to ensure that cyberattacks were detected and prevented.

**C.  Defendant Knew of the Risk of a Cyberattack because Service Providers in Possession of Private Information are Particularly Suspectable.**

52.    Defendant's negligence in failing to safeguard Plaintiffs' and Class Members' Private Information is exacerbated by the repeated warnings and alerts directed to protecting and securing such data.

53.    Private Information of the kind accessed in the Data Breach is of great value to hackers and cybercriminals as it can be used for a variety of unlawful and nefarious purposes, including ransomware, fraudulent misuse, and sale on the dark web.

54.    Private Information can also be used to distinguish, identify, or trace an individual's identity, such as their name, Social Security number, and financial records. This may be accomplished alone, or in combination with other personal information that is connected, or linked to an individual, such as his or his birthdate, birthplace, and mother's maiden name.

55.    Data thieves regularly target entities like Defendant due to the highly sensitive information that such entities maintain. Defendant knew and understood that unprotected Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

56.    In light of past high profile data breaches at industry-leading companies, including, for example, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or, if acting as a reasonable employee-benefit management provider, should have known the Private Information it collected and maintained would be vulnerable to and targeted by cybercriminals.

57.    In 2021, a record 1,862 data breaches occurred, resulting in approximately

293,927,708 sensitive records being exposed, a 68% increase from 2020.[5]

58. The increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant itself. According to IBM's 2022 report, "[f]or 83% of companies, it's not if a data breach will happen, but when."[6]

59. As a company in possession of Private Information, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiffs and Class Members and of the foreseeable consequences if its data security systems were breached. Such consequences include the significant costs imposed on Plaintiffs and Class Members due to a breach. Nevertheless, Defendant failed to take adequate cybersecurity measures to prevent the Data Breach.

60. Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiffs and Class Members from being wrongfully disclosed to cybercriminals.

61. Given the nature of the Data Breach, it was foreseeable that Plaintiffs' and Class Members' Private Information compromised therein would be targeted by hackers and cybercriminals for use in variety of different injurious ways. Indeed, the cybercriminals who possess Plaintiffs' and Class Members' Private Information can easily obtain their tax returns or open fraudulent credit card accounts in Plaintiffs' and Class Members' names.

62. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on its network server(s), amounting to thousands of individuals' detailed

---

[5] *See* Identity Theft Res. Ctr., *2021 Data Breach Annual Report*, at 6 (Jan. 2022), http://notified.idtheftcenter.org/s/.

[6] IBM, "Cost of a data breach 2022: A million-dollar race to detect and respond," available at https://www.ibm.com/reports/data-breach (last accessed July 3, 2025).

Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of that unencrypted data.

63.    Plaintiffs and Class Members were the foreseeable and probable victims of Defendant's inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing Private Information and the critical importance of providing adequate security for that information.

64.    The breadth of data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Plaintiffs and Class Members especially vulnerable to identity theft, tax fraud, credit and bank fraud, and the like.

**D. Defendant was Required, but Failed to Comply with FTC Rules and Guidance, HIPAA, and HITECH.**

65.    The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

66.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses like Defendant. These guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[7]

67.    The FTC's guidelines also recommend that businesses use an intrusion detection

---

[7] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (2016),http://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed July 3, 2025).

14

system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[8]

68.     The FTC further recommends that companies not maintain confidential personal information, like Private Information, longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

69.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect third parties' confidential data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act.  Orders resulting from these actions further clarify the measures business like Defendant must undertake to meet their data security obligations.

70.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect employee data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential employee data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

71.     These FTC enforcement actions include actions against employers and charitable organizations, like Defendant.

---

[8] *Id.*

72.     Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect sensitive personal information, like Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

73.     The FTC has also recognized that consumer data is a new and valuable form of currency.  In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable.  Data is currency.  The larger the data set, the greater potential for analysis and profit."[9]

74.     Defendant failed to properly implement basic data security practices, in violation of its duties under the FTC Act.

75.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

76.     Furthermore, Defendant is required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C. The Privacy

---

[9] Statement of FTC Commissioner Pamela Jones Harbour (Remarks Before FTC Exploring Privacy Roundtable),
http://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf.

Rule and the Security Rule set nationwide standards for protecting health information, including health information stored electronically.

77.     The Security Rule requires Defendant to do the following:

a.     Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b.     Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c.     Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d.     Ensure compliance by its workforce.[10]

78.     Pursuant to HIPAA's mandate that Defendant follow "applicable standards, implementation specifications, and requirements . . . with respect to electronic protected health information," 45 C.F.R. § 164.302, Defendant was required to, at minimum, "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information," 45 C.F.R. § 164.306(e), and "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

79.     Defendant is also required to follow the regulations for safeguarding electronic medical information pursuant to the Health Information Technology Act ("HITECH"). *See* 42

---

[10] *Summary of the HIPAA Security Rule*, HHS, https://www.hhs.gov/hipaa/for-professionals/security/laws-regulations/index.html (last visited July 3, 2025).

U.S.C. § 17921, 45 C.F.R. § 160.103.

80.     Both HIPAA and HITECH obligate Defendant to follow reasonable security standards, respond to, contain, and mitigate security violations, and to protect against disclosure of sensitive patient Private Information. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); 45 C.F.R. § 164.530(f); 42 U.S.C. § 17902.

81.     In all the ways enumerated in herein, Defendant failed to comply with HIPAA, HITECH, the FTC Act, and state law. It failed to maintain adequate security practices, systems, and protocols to prevent data loss, failed to mitigate the risks of a data breach and loss of data, and failed to ensure the confidentiality and protection of Private Information.

**E.  Defendant Failed to Comply with Industry Standards.**

82.     A number of industry and national best practices have been published and are widely used as a go-to resource when developing an institution's cybersecurity standards.

83.     The Center for Internet Security's (CIS) Critical Security Controls (CSC) recommends certain best practices to adequately secure data and prevent cybersecurity attacks, including Critical Security Controls of Inventory and Control of Enterprise Assets, Inventory and Control of Software Assets, Data Protection, Secure Configuration of Enterprise Assets and Software, Account Management, Access Control Management, Continuous Vulnerability Management, Audit Log Management, Email and Web Browser Protections, Malware Defenses, Data Recovery, Network Infrastructure Management, Network Monitoring and Defense, Security Awareness and Skills Training, Service Provider Management, Application Software Security, Incident Response Management, and Penetration Testing.[11]

---

[11]  *See* Rapid7, "CIS Top 18 Critical Security Controls Solutions," available at https://www.rapid7.com/solutions/compliance/critical-controls/ (last accessed July 3, 2025).

84.     In addition, the NIST recommends certain practices to safeguard systems[12]:

a.      Control who logs on to your network and uses your computers and other devices.

b.      Use security software to protect data.

c.      Encrypt sensitive data, at rest and in transit.

d.      Conduct regular backups of data.

e.      Update security software regularly, automating those updates if possible.

f.      Have formal policies for safely disposing of electronic files and old devices.

g.      Train everyone who uses your computers, devices, and network about cybersecurity. You can help employees understand their personal risk in addition to their crucial role in the workplace.

85.     Further still, the Cybersecurity & Infrastructure Security Agency ("CISA") makes specific recommendations to organizations to guard against cybersecurity attacks, including (a) reducing the likelihood of a damaging cyber intrusion by validating that "remote access to the organization's network and privileged or administrative access requires multi-factor authentication, [e]nsur[ing] that software is up to date, prioritizing updates that address known exploited vulnerabilities identified by CISA[,] [c]onfirm[ing] that the organization's IT personnel have disabled all ports and protocols that are not essential for business purposes," and other steps; (b) taking steps to quickly detect a potential intrusion, including "[e]nsur[ing] that cybersecurity/IT personnel are focused on identifying and quickly assessing any unexpected or unusual network behavior [and] [e]nabl[ing] logging in order to better investigate issues or events[;] [c]onfirm[ing] that the organization's entire network is protected by antivirus/antimalware software and that

---

[12] https://www.ftc.gov/business-guidance/small-businesses/cybersecurity/nist-framework

signatures in these tools are updated," and (c) "[e]nsur[ing] that the organization is prepared to respond if an intrusion occurs," and other steps.[13]

86.     Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including by failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established frameworks for reasonable cybersecurity readiness, and by failing to comply with other industry standards for protecting Plaintiffs' and Class Members' Private Information, resulting in the Data Breach.

**F.  Defendant Owed Plaintiffs and Class Members a Common Law Duty to Safeguard their Private Information.**

87.     In addition to its obligations under federal and state laws, Defendant owed a common law duty to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant's duty owed to Plaintiffs and Class Members obligated it to provide reasonable data security, including consistency with industry standards and requirements, and to ensure its computer systems, networks, and protocols adequately protected Plaintiffs' and Class Members' Private Information.

88.     Defendant owed a duty to Plaintiffs and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information in its

---

[13] Cybersecurity & Infrastructure Security Agency, "Shields Up: Guidance for Organizations," available at https://www.cisa.gov/shields-guidance-organizations (last accessed July 3, 2025).

possession, including adequately training its employees and others who accessed Private Information within its computer systems on how to adequately protect Private Information.

89.      Defendant owed a duty to Plaintiffs and Class Members to implement processes that would detect a compromise of Private Information in a timely manner and act upon data security warnings and alerts in a timely fashion.

90.      Defendant owed a duty to Plaintiffs and Class Members to disclose in a timely and accurate manner when and how the Data Breach occurred.

91.      Defendant owed a duty of care to Plaintiffs and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

92.      Defendant failed to take the necessary precautions required to safeguard and protect Plaintiffs' and Class Members' Private Information from unauthorized disclosure. Defendant's actions and omissions represent a flagrant disregard of Plaintiffs' and Class Members' rights.

**G. Plaintiffs and Class Members Suffered Common Injuries and Damages due to Defendant's conduct.**

93.      Defendant's failure to implement or maintain adequate data security measures for Plaintiffs' and Class Members' Private Information directly and proximately injured Plaintiffs and Class Members by the resulting disclosure of their Private Information in the Data Breach.

94.      The ramifications of Defendant's failure to keep secure the Private Information of Plaintiffs and Class Members are long lasting and severe. Once Private Information is stolen fraudulent use of that information and damage to victims may continue for years.

95.      Plaintiffs and Class Members are also at a continued risk because their Private remains in Defendant's systems, which have already been shown to be susceptible to compromise and attack and are subject to further attack so long as Defendant fails to undertake the necessary and appropriate security and training measures to protect its customers' Private Information.

96.     As a result of Defendant's ineffective and inadequate data security practices, the resulting Data Breach, and the foreseeable consequences of their Private Information ending up in criminals' possession, the risk of identity theft to Plaintiffs and Class Members has materialized and is imminent, and they have all sustained actual injuries and damages, including, without limitation, (a) invasion of privacy; (b) financial costs incurred mitigating the materialized risk and imminent threat of identity theft; (c) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft; (d) financial costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) deprivation of value of their Private Information; (g) loss of the benefit of their bargain with Defendant; (h) emotional distress including anxiety and stress in dealing with the Data Breach's aftermath; and (i) the continued risk to their sensitive Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information it collects and maintains.

***The Risk of Identity Theft to Plaintiff and Class Members is Present and Ongoing***

97.     Plaintiffs and Class Members are at a heightened risk of identity theft for years to come because of the Data Breach.

98.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[14] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien

---

[14] 17 C.F.R. § 248.201 (2013).

registration number, government passport number, employer or taxpayer identification number."[15]

99.     The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal individuals' personal data to monetize the information. Criminals monetize the data by selling the stolen information on the internet black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

100.    The dark web is an unindexed layer of the internet that requires special software or authentication to access.[16] Criminals in particular favor the dark web as it offers a degree of anonymity to visitors and website publishers. Unlike the traditional or "surface" web, dark web users need to know the web address of the website they wish to visit in advance. For example, on the surface web, the CIA's web address is cia.gov, but on the dark web the CIA's web address is ciadotgov4sjwlzihbbgxnqg3xiyrg7so2r2o3lt5wz5ypk4sxyjstad.onion.[17] This prevents dark web marketplaces from being easily monitored by authorities or accessed by those not in the know.

101.    A sophisticated black market exists on the dark web where criminals can buy or sell malware, firearms, drugs, and frequently, personal and medical information like the Private Information at issue here.[18] The digital character of Private Information stolen in data breaches lends itself to dark web transactions because it is immediately transmissible over the internet and the buyer and seller can retain their anonymity. The sale of a firearm or drugs on the other hand requires a physical delivery address. Nefarious actors can readily purchase usernames and

---

[15] *Id.*

[16] *What Is the Dark Web?*, Experian, available at https://www.experian.com/blogs/ask-experian/what-is-the-dark-web/.

[17] *Id.*

[18] *What is the Dark Web?* – Microsoft 365, available at https://www.microsoft.com/en-us/microsoft-365-life-hacks/privacy-and-safety/what-is-the-dark-web.

passwords for online streaming services, stolen financial information and account login credentials, and Social Security numbers, dates of birth, and medical information.[19] As Microsoft warns "[t]he anonymity of the dark web lends itself well to those who would seek to do financial harm to others."[20]

102.    The unencrypted Private Information of Plaintiffs and Class Members will end up for sale on the dark web because that is the *modus operandi* of hackers. In addition, unencrypted and detailed Private Information may fall into the hands of companies that will use it for targeted marketing without the approval of Plaintiffs and Class Members. Unauthorized individuals can easily access the Plaintiffs' and Class Members' Private Information.

103.    Because a person's identity is akin to a puzzle with multiple data points, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or to track the victim to attempt other hacking crimes against the individual to obtain more data to perfect a crime.

104.    For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails. Data breaches are often the starting point for these additional targeted attacks on the victims.

---

[19] *Id.; What Is the Dark Web?*, Experian, available at https://www.experian.com/blogs/ask-experian/what-is-the-dark-web/.
[20] *What is the Dark Web?* – Microsoft 365, available at https://www.microsoft.com/en-us/microsoft-365-life-hacks/privacy-and-safety/what-is-the-dark-web.

105.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to numerous serious fraudulent uses and are difficult for an individual to change.  The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> Identity theft is one of the fastest growing crimes in America. Scammers use your Social Security number (SSN) to get other personal information about you. They can use your SSN and your good credit to apply for more credit in your name. Then, when they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your SSN until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought.[21]

106.     One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.[22]

107.     With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on

---

[21] Social Security Administration, *Identity Theft and Your Social Security Number*, available at: http://www.ssa.gov/pubs/EN-05-10064.pdf.

[22] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm/

individuals.

108.     The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiffs' and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

109.     Thus, even if certain information (such as driver's license numbers) was not stolen in the data breach, criminals can still easily create a comprehensive "Fullz" package.

110.     Then, this comprehensive dossier can be sold—and then resold in perpetuity—to crooked operators and other criminals (like illegal and scam telemarketers).

111.     The development of "Fullz" packages means that stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiffs' and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. That is exactly what is happening to Plaintiffs and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that their stolen Private Information is being misused, and that such misuse is traceable to the Data Breach.

112.     Victims of identity theft can suffer from both direct and indirect financial losses. According to a research study published by the Department of Justice:

> A direct financial loss is the monetary amount the offender obtained from misusing the victim's account or personal information, including the estimated value of goods, services, or cash obtained. It includes both out-of-pocket loss and any losses that were reimbursed to the victim. An indirect loss includes any other monetary cost caused by the identity theft, such as legal fees, bounced checks, and other miscellaneous expenses that are not reimbursed (e.g., postage, phone calls, or

notary fees). All indirect losses are included in the calculation of out-of-pocket loss.[23]

113.    According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims.[24]

114.    Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[25] Yet, Defendant failed to rapidly report to Plaintiffs and the Class that their Private Information was stolen.

115.    Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

116.    In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims must spend a considerable time repairing the damage caused by the theft of their Private Information. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

117.    Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen Private Information. To protect themselves, Plaintiffs and Class Members will need to remain vigilant for years or even decades to come.

### *Loss of Time to Mitigate the Risk of Identify Theft and Fraud*

---

[23] Erika Harrell, *Bureau of Just. Stat.*, U.S. DEP'T OF JUST., NCJ 256085, *Victims of Identity Theft*, 2018 I (2020) https://bjs.ojp.gov/content/pub/pdf/vit18.pdf (last accessed July 3, 2025).
[24] *See* https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120.
[25] *Id.*

118.     As a result of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm—yet the asset of time has been lost.

119.     In the event that Plaintiffs and Class Members experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record

120.     Thus, due to the actual and imminent risk of identity theft, Plaintiffs and Class Members must monitor their financial accounts for many years to mitigate that harm.

121.     Plaintiffs and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as placing "freezes" and "alerts" with credit reporting agencies, contacting financial institutions, closing or modifying financial accounts, changing passwords, reviewing and monitoring credit reports and accounts for unauthorized activity, and filing police reports, which may take years to discover.

122.     These efforts are consistent with the steps that FTC recommends that data breach victims take several steps to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on

their credit, and correcting their credit reports.[26]

123.    Once Private Information is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiff and Class Members will need to maintain these heightened measures for years, and possibly their entire lives, as a result of Defendant's conduct that caused the Data Breach.

### *Diminished Value of Private Information*

124.    Personal data like Private Information is a valuable property right.[27] Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

125.    An active and robust legitimate marketplace for personal information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[28] In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[29] Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50 a year.[30]

126.    As a result of the Data Breach, Plaintiffs' and Class Members' Private Information,

---

[26] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps (last visited July 3, 2025).
[27] *See, e.g.*, John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PRIVATE INFORMATION") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PRIVATE INFORMATION, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).
[28] https://www.latimes.com/business/story/2019-11-05/column-data-brokers
[29] https://datacoup.com/.
[30] Nielsen Computer & Mobile Panel, Frequently Asked Questions, available at https://computermobilepanel.nielsen.com/ui/US/en/faqen.html.

which has an inherent market value in both legitimate and black markets, has been damaged and diminished in its value by its unauthorized and likely release onto the dark web, where holds significant value for the threat actors.

127.    However, this transfer of value occurred without any consideration paid to Plaintiffs or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

***Future Cost of Credit and Identify Theft Monitoring is Reasonable and Necessary***

128.    To date, Defendant has done little to provide Plaintiffs and Class Members with relief for the damages they have suffered due to the Data Breach.

129.    Given the type of targeted attack in this case and sophisticated criminal activity, the type of information involved, and the *modus operandi* of cybercriminals, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes—*e.g.*, opening bank accounts in the victims' names to make purchases or to launder money; filing false tax returns; taking out loans or insurance; or filing false unemployment claims.

130.    Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that his or his information was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

131.    Furthermore, the information accessed and disseminated in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data

breach, where victims can easily cancel their cards and request a replacement.[31] The information disclosed in this Data Breach is impossible to "close" and difficult, if not impossible, to change (such as Social Security numbers).

132.    Consequently, Plaintiffs and Class Members are at a present and ongoing risk of fraud and identity theft for many years into the future.

133.    The retail cost of credit monitoring and identity theft monitoring can cost $200 or more a year per Class Member. This is a reasonable and necessary cost to protect Class Members from the risk of identity theft that arose from Defendant's Data Breach. This is a future cost for a minimum of five years that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard their Private Information.

### *Loss of Benefit of the Bargain*

134.    Furthermore, Defendant's poor data security deprived Plaintiffs and Class Members of the benefit of their bargain.

135.    When agreeing to provide their Private Information, which was a condition precedent for receiving Employee Benefits and Employee Plan Beneficiary Benefits to, or donations to Defendant, to Plaintiffs and Class Members, understood and expected that they were, in part, paying for services and data security to protect the Private Information they were required to provide.

136.    In fact, Defendant did not provide the expected data security. Accordingly, Plaintiffs and Class Members received services of a lesser value than what they reasonably expected to receive under the bargains struck with Defendant.

---

[31] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, FORBES (Mar. 25, 2020), https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1.

*Plaintiff John Cunningham's Experience*

137.    Plaintiff Cunningham is a beneficiary of a former employee of Defendant whose Private Information was supplied to Defendant as a condition of the employee benefits. Upon information and belief, Plaintiff Cunningham's Private Information was and continues to be stored and maintained in Defendant's network systems.

138.    Plaintiff Cunningham greatly values his privacy and is very careful about sharing his sensitive Private Information. Plaintiff Cunningham diligently protects his Private Information and stores any documents containing Private Information in a safe and secure location. He has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

139.    Plaintiff Cunningham would not have provided his Private Information to Defendant had he known it would be kept using inadequate data security and vulnerable to a cyberattack.

140.    At the time of the Data Breach, Defendant retained Plaintiff Cunningham's Private Information in its network systems with inadequate data security, causing Plaintiff Cunningham's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

141.    On or about April 4, 2025, Defendant sent Plaintiff Cunningham a Notice Letter informing him that his Private Information was accessed and exposed to unauthorized hackers in the Data Breach. According to the Notice Letter, the hackers acquired files containing Plaintiff Cunningham's sensitive Private Information, including his name and Social Security number.

142.    Plaintiff Cunningham has made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach and reviewing financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff

Cunningham now regularly monitors his financial statements, valuable time he otherwise would have spent on other activities.

143.    Plaintiff Cunningham further anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. Due to the Data Breach, Plaintiff Cunningham is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

144.    As a result of the Data Breach, Plaintiff Cunningham has received "Dark Web Alerts" from his credit monitoring service in which he was alerted that his information has appeared on the Dark Web, such as his Social Security number and his email address.

145.    As a result of the Data Breach, Plaintiff Cunningham has been contacted by personal loan and car lenders, for which he made no applications. Additionally, he received a notice that someone tried to access a financial account from an IP address in Germany, in response to which he closed the account.

146.    Due to the Data Breach, Plaintiff Cunningham has experienced an excessive increase in spam calls, specifically calls and a letter regarding loans he did not apply for.

147.    Plaintiff Cunningham further believes his Private Information, and that of Class Members, was and will be sold and disseminated on the dark web following the Data Breach as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

148.    The Data Breach has also caused Plaintiff Cunningham to suffer fear, anxiety, and stress about his Private Information now being in the hands of cybercriminals, which has been compounded by the fact that Defendant still has not fully informed him of key details about the Data Breach's occurrence or the information stolen.

*Plaintiff Lisa Capp's Experience*

149.    Upon information and belief, Defendant obtained Plaintiff Capps' Private Information in the course of conducting its regular business operations.

150.    Plaintiff Capps greatly values her privacy and is very careful about sharing her sensitive Private Information. Plaintiff Capps diligently protects her Private Information and stores any documents containing Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

151.    Plaintiff Capps would not have provided her Private Information to Defendant had she known it would be kept using inadequate data security and vulnerable to a cyberattack.

152.    At the time of the Data Breach, Defendant retained Plaintiff Capps' Private Information in its network systems with inadequate data security, causing Plaintiff Capps' Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

153.    On or about April 4, 2025, Defendant sent Plaintiff Capps a Notice Letter informing her that her Private Information was accessed and exposed to unauthorized hackers in the Data Breach. According to the Notice Letter, the hackers acquired files containing Plaintiff Capps' sensitive Private Information, including her name, passport number, financial account number/information, and Social Security number.

154.    Plaintiff Capps has made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach and reviewing financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff Capps now regularly monitors her financial statements, valuable time she otherwise would have spent on other activities.

155.   Plaintiff Capps further anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. Due to the Data Breach, Plaintiff Capps is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

156.   Plaintiff Capps further believes her Private Information, and that of Class Members, was and will be sold and disseminated on the dark web following the Data Breach as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

157.   The Data Breach has also caused Plaintiff Capps to suffer fear, anxiety, and stress about her Private Information now being in the hands of cybercriminals, which has been compounded by the fact that Defendant still has not fully informed her of key details about the Data Breach's occurrence or the information stolen.

## CLASS ACTION ALLEGATIONS

158.   Plaintiffs bring this class action under the Fed. R. Civ. P. 23(b)(2) and (b)(3) individually and on behalf of all members of the following nationwide class ("Class"):

> All individuals residing in the United States whose Private Information was impacted by the Data Breach, including all those who received Notice Letters.

159.   Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns; all federal, state, or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; any judicial officer presiding over any aspect of this matter, members of their immediate family, and members of their judicial staff; any individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; Plaintiffs' counsel and

Defendants' counsel; members of the jury; and the legal representatives.

160.    Plaintiffs hereby reserve the right to amend or modify the definitions of the Class with greater specificity or division after having had an opportunity to conduct discovery

161.    The Class asserts claims against Defendants for negligence (Count I); breach of implied contract (Count II); and for declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* (Count III).

162.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of his claims on a class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

163.    **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of Class Members is unknown to Plaintiffs at this time, Defendant has acknowledged that the Private Information of at least 52,286 individuals throughout the United States and its territories was compromised in the Data Breach. Those persons' names and addresses are available from Defendant's records, and Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include electronic mail, U.S. Mail, internet notice, and/or published notice.

164.    **Predominance of Common Issues**. **Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Rule 23(a)(2)'s commonality requirement and Rule 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class Members. The common questions include:

> a.    Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class Members' Private Information;

b.      Whether Defendant's conduct violated the FTC Act and/or HIPAA;

c.      Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations including HIPAA and HITECH;

d.      Whether Defendant's data security systems were consistent with industry standards;

e.      Whether Defendant knew or should have known that its servers and configurations were vulnerable to attack;

f.      Whether Defendant failed to take adequate and reasonable measures to ensure that its computer, applications, and data systems were protected and updated;

g.      Whether Defendant failed to take available steps to prevent and stop the Data Breach from happening;

h.      Whether Defendant should have discovered the Data Breach earlier;

i.      Whether Defendant took reasonable measures to determine the extent of the Data Breach after it was discovered;

j.      Whether Defendant owed tort duties to Plaintiffs and Class Members to protect their Private Information;

k.      Whether Defendant owed a duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class Members;

l.      Whether Defendant's delay in informing Plaintiffs and Class Members of the Data Breach was unreasonable;

m.      Whether Defendant's method of informing Plaintiffs and Class Members of the Data Breach was unreasonable;

n.      Whether Defendant breached their duties to protect the Private Information of Plaintiffs and Class Members by failing to provide adequate data security;

o.      Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the Data Breach, resulting in the unauthorized access to and/or theft of Plaintiffs' and Class Members' Private Information;

p.      Whether, as a result of Defendant's conduct, Plaintiffs and Class Members face a significant ongoing threat of identity theft, harm, and/or have already suffered harm, and, if so, the appropriate measure of damages to which they are entitled;

q.      Whether, as a result of Defendant's conduct, Plaintiffs and Class Members are entitled to injunctive, equitable, declaratory, and/or other relief, and, if so, the nature of such relief.

165.    **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of other Class Members' claims because Plaintiffs and Class Members were subjected to the same allegedly unlawful conduct and damaged in the same way. Plaintiffs' Private Information was in Defendant's possession at the time of the Data Breach and was compromised as a result of the Data Breach. Plaintiffs' and Class Member's damages and injuries are akin to those of other Class Members and Plaintiffs seek relief consistent with the relief of the Class.

166.    **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiffs are adequate representatives of the Class because Plaintiffs are each members of the Class and are committed to pursuing this matter against Defendant to obtain relief for the Class. Plaintiffs have no conflicts of interest with the Class. Plaintiffs' Counsel are competent and experienced in litigating class actions, including extensive experience in data breach and privacy litigation. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the

interests of the Class.

167.    **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to Plaintiffs and Class Members may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs and Class Members are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class Member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

168.    **Manageability**. **Fed. R. Civ. P. 23(b)(3).** The litigation of the class claims alleged herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates there would be no significant manageability problems with prosecuting this lawsuit as a class action.

169.    **Ascertainability**. All members of the proposed Class are readily ascertainable. The Class is defined by reference to objective criteria, and there is an administratively feasible mechanism to determine who fits within the Class. Defendant has access to information regarding which individuals were affected by the Data Breach and has already provided notifications to some of those people. Using this information, the members of the Class can be identified, and their

contact information ascertained for purposes of providing notice to the Class.

170. **Particular Issues. Fed. R. Civ. P. 23(c)(4).** Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Defendant owed a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

b. Whether Defendant breached a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

c. Whether Defendant failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security;

d. Whether implied contracts existed between Defendant on the one hand, and Plaintiffs and Class Members on the other, and the terms of those implied contracts;

e. Whether Defendant breached the implied contracts;

f. Whether Defendant adequately and accurately informed Plaintiffs and Class Members their Private Information had been compromised;

g. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h. Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

171. Injunctive and Declaratory Relief. Fed. R. Civ. P. 23(b)(2) and (c). Finally, class

certification is also appropriate under Rule 23(b)(2) and (c). Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole, including:

      a.     Ordering Defendant to provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

      b.     Ordering that, to comply with Defendant's explicit or implicit contractual obligations and duties of care, Defendant must implement and maintain reasonable security and monitoring measures, including, but not limited to:

          i.     prohibiting Defendant from engaging in the wrongful and unlawful acts alleged herein;

          ii.     requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

          iii.     requiring Defendant to delete and purge the Private Information of Plaintiffs and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

          iv.     requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiffs' and Class Members' Private Information;

          v.     requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

vi.      prohibiting Defendant from maintaining Plaintiffs' and Class Members' Private Information on a cloud-based database until proper safeguards and processes are implemented;

vii.     requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

viii.    requiring Defendant to conduct regular database scanning and securing checks;

ix.      requiring Defendant to monitor ingress and egress of all network traffic;

x.       requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling Private Information, as well as protecting the Private Information of Plaintiffs and Class Members;

xi.      requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xii.     requiring Defendant to implement, maintain, review, and revise as necessary a threat management program to appropriately monitor Defendant networks for internal and external threats, and assess whether monitoring tools are

properly configured, tested, and updated;

xiii.   requiring Defendant to meaningfully educate all Class Members about the threats that it faces because of the loss of its confidential Private Information to third parties, as well as the steps affected individuals must take to protect themselves; and

xiv.   Incidental retrospective relief, including but not limited to restitution.

## CAUSES OF ACTION

### COUNT I
### Negligence
### (On Behalf of Plaintiff and the Class)

172.   Plaintiffs reallege paragraphs 1 through 171 as if fully set forth below.

173.   Defendant collected sensitive Private Information from Plaintiffs and Class Members as a requirement for employment-related benefits from Defendant or making donations to Defendant.

174.   Plaintiffs and the Class entrusted their Private Information to Defendant on the premise and with the understanding that Defendant would safeguard their Private Information, use their Private Information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

175.   Defendant owed a duty of care to Plaintiffs and Class members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their Private Information in a data breach. And here, that foreseeable danger came to pass.

176.   This duty included, among other things: (a) regularly designing, maintaining, and

testing Defendant's security systems to ensure that Plaintiffs' and Class Members' Private Information in Defendant's possession was adequately secured and protected; (b) implementing processes that would detect a breach of its security system in a timely manner; (c) timely acting upon warnings and alerts, including those generated by its own security systems, regarding intrusions to its networks; and (d) maintaining data security measures consistent with industry standards, including regularly updating, patching, and evaluating security measures

177.    Defendant's duty to use reasonable care arose from several sources, including but not limited to those alleged in this Complaint.

178.    Plaintiffs and Class Members are consumers within the class of persons that HIPAA, HITECH, and Section 5 of the FTC Act were intended to protect.

179.    The harm that has occurred is the type of harm HIPAA, HITECH, and the FTC Act were intended to guard against.

180.    Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiffs and the Class could and would suffer if their Private Information was wrongfully disclosed.

181.    Defendant owed these duties to Plaintiffs and Class members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiffs and Class members' Private Information.

182.     Defendant owed—to Plaintiffs and Class members—duties to do the following, at least and among other things:

        a.    exercise reasonable care in handling and using the Private Information in its

care and custody;

b.    implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c.    promptly detect attempts at unauthorized access; and

d.    notify Plaintiffs and Class members within a reasonable timeframe of any breach to the security of their Private Information.

183.   Thus, Defendant owed a duty to timely and accurately disclose to Plaintiffs and Class members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiffs and Class members to take appropriate measures to protect their Private Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

184.   Defendant also had a duty to exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain under applicable regulations.

185.   Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiffs and the Class involved an unreasonable risk of harm to Plaintiffs and the Class, even if the harm occurred through the criminal acts of a third party.

186.   Defendant's duty to use reasonable security measures arose because of the  special relationship that existed between Defendant and Plaintiffs and the Class. That special relationship arose because Plaintiffs and the Class entrusted Defendant with their confidential Private Information, a necessary part of obtaining employee benefit plans from Defendant. Only Defendant could have ensured that its security systems and data storage architecture were sufficient to prevent or minimize the Data Breach because it had exclusive knowledge and control

regarding same

187.   Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and  adequate computer systems and data security practices to safeguard Plaintiffs and Class  members' Private Information.

188.   Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Private Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the Class members' Private Information.

189.   Defendant violated its duty under Section 5 of the FTC Act, HIPAA, the HIPAA Privacy Rule and Security Rule, and HITECH by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards  as described  in  detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information Defendant had collected and  stored and the foreseeable consequences of a data breach, including, specifically, the immense damages  that would result to individuals in the event of a breach, which ultimately came to pass.

190.   Defendant's duty of care to use reasonable security measures arose as a result of the relationship that existed between Defendant and its employees, employees' beneficiaries, and charitable donors, which is recognized by laws and regulations including but not limited to the FTC Act, HIPAA, the HIPAA Privacy Rule and Security Rule, and HITECH, as well as common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach.

191.   The risk that unauthorized persons would attempt to gain access to the Private

Information and misuse it was foreseeable. Given that Defendant holds vast amounts of Private Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Private Information —whether by malware or otherwise.

192.     Private Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private Information of Plaintiff' and Class members' and the importance of exercising reasonable care in handling it.

193.     Defendant improperly and inadequately safeguarded the Private Information of Plaintiffs and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

194.     Defendant breached its duties of care owed to Plaintiffs and the Class, as evidenced by the Data Breach.

195.     Defendant breached the duties owed to Plaintiffs and Class Members alleged above and, thus, wase negligent in so to doing. Defendant breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the Private Information of Plaintiffs and Class Members; (b) detect the Data Breach while it was ongoing; (c) maintain security systems consistent with industry standards during the period of the Data Breach; (d) comply with regulations protecting the Private Information at issue during the period of the Data Breach; and (e) disclose in a timely and adequate manner that Plaintiffs' and Class Members' Private Information in Defendant's possession had been or was reasonably believed to have been, stolen, or compromised.

196.     Furthermore, Defendant breached its duty of reasonable care by the following (alone or in combination):

    a.     Failing to encrypt all sensitive patient Private Information;

b.      Failing to implement hardened firewall rules, to blacklist traffic from and to IP addresses known to be malicious;

c.      Failing to implement geo-blocking rules to sufficiently restrict access points into Defendant's server environment, so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

d.      Failing to enhance password complexity requirements and change administrative-level system accounts' passwords;

e.      Failing to install patches to known vulnerabilities;

f.      Failing to include fail-safe features in their systems that, upon detecting unusual levels of traffic, would have locked down and insulated their systems—and Plaintiffs' and Class Members' Private Information—from cyber thefts such as the Data Breach;

g.      Failing to install sufficient system and security monitoring software across all their servers;

h.      Failing to conduct database scanning and securing checks with sufficient frequency;

i.      Failing to implement MFA across computer systems, especially where MFA is an inexpensive, industry standard, and efficient tool widely available to Defendant to safeguard Plaintiffs' and Class Members' Private Information from cyberthreats, including the Data Breach;

j.      Failing to require employees and contractors to change their passwords, and provide account holders with prompts to change their passwords, with sufficient frequency;

k.      Failing to require employees to use passwords of sufficient complexity;

l.      Failing to provide refresher HIPAA training to its active workforce with sufficient frequency;

m.      Failing to implement a threat management program to appropriate monitor Defendant's networks for external threats, and to assess, with sufficient frequency, whether monitoring tools are properly configured, tested, and updated; and

n.      Failing to delete and purge the Private Information of Plaintiffs and Class Members no longer needed.

197.    But for Defendant's wrongful and negligent breaches of its duties owed to Plaintiffs and Class Members, their Private Information would not have been compromised

198.    Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs and Class members' Private Information by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the Private Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

199.    Defendant breached its duties by failing to exercise reasonable care in  supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and Private Information of Plaintiffs and Class members which actually and proximately caused the Data Breach and Plaintiffs and Class members' injury.

200.    Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and Class Members, which actually and proximately  caused and exacerbated the harm from the Data Breach and Plaintiffs and Class Members'  injuries-in-fact.

201.    Defendant has admitted that the Private Information of Plaintiffs and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

202.    As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

203.    As a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members have been injured and are entitled to compensatory, consequential, and nominal damages suffered because of the Data Breach in an amount to be proven at trial, and which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

204.    Such injuries include one or more of the following: (a) actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; (b) the loss of the value of their privacy and the confidentiality of the stolen Private Information; (c) the illegal sale of the compromised Private Information on the black market; (d) the present and continuing threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; (e) mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; (f) the time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; (g) the expenses incurred and time spent initiating fraud alerts; (h) the resulting decrease in credit scores and ratings; (i) their lost work time; (j) the lost value of the Private Information; (k) the lost value of access to their Private Information permitted by Defendant; (l) the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Defendant's Data Breach; (m) lost benefit of their bargains and overcharges for services or products; and (n) the nominal and general damages and other economic and non-economic harm suffered.

## COUNT II
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Class)

205.    Plaintiffs reallege paragraphs 1 through 171 as if fully set forth below.

206.    Plaintiffs and the Class delivered their Private Information to Defendant as part of the process of obtaining employee benefits from or and making charitable donations to Defendant.

207.    Plaintiffs and Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect such information and to timely and accurately notify Plaintiffs and Class Members if and when their data had been breached and compromised. Each such contractual relationship imposed on Defendant an implied covenant of good faith and fair dealing by which Defendant was required to perform its obligations and manage Plaintiffs' and Class Members' data in a manner which comported with the reasonable expectations of privacy and protection attendant to entrusting such data to Defendant.

208.    In providing their Private Information, Plaintiffs and Class Members entered into an implied contract with Defendant whereby Defendant, in receiving such data, became obligated to reasonably safeguard Plaintiffs' and the other Class Members' Private Information.

209.    A meeting of the minds occurred when Plaintiffs and Class Members agreed to, and did, provide their Private Information to Defendant in exchange for, amongst other things, the protection of such information.

210.    In delivering their Private Information to Defendant, Plaintiffs and Class Members intended and understood that Defendant would adequately safeguard that data.

211.    Plaintiffs and the Class Members would not have entrusted their Private Information to Defendant in the absence of such implied contracts.

212.    Defendant accepted possession of Plaintiffs' and Class Members' Private Information.

213.    Had Defendant disclosed to Plaintiffs and Class Members that Defendant did not have adequate computer systems and security practices to secure their Private Information, Plaintiffs and members of the Class would not have provided their Private Information to Defendant.

214.    Defendant recognized that customers' Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiffs and Class Members.

215.    Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendant.

216.    Defendant breached the implied contract with Plaintiffs and Class Members by failing to take reasonable measures to safeguard its employees', employees' beneficiaries', and charitable donors' data.

217.    Defendant breached the implied contracts with Plaintiffs and Class Members by failing to promptly notify them of the access to and exfiltration of their Private Information.

218.    Defendant further breached the implied contracts with Plaintiffs and Class Members by failing to comply with its promise to abide by HIPAA.

219.    Defendant further breached the implied contracts with Plaintiffs and Class Members by failing to ensure the confidentiality and integrity of electronic protected health information. Defendant created, received, maintained, and transmitted in violation of 45 C.F.R. § 164.306(a)(1).

220.    Defendant further breached the implied contracts with Plaintiffs and Class

Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1).

221.    Defendant further breached the implied contracts with Plaintiffs and Class Members by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 C.F.R. § 164.306(a)(2).

222.    In sum, Plaintiffs and Class Members have performed under the relevant agreements, or such performance was waived by the conduct of Defendant.

223.    As a direct and proximate result of the breach of the contractual duties, Plaintiffs and Class Members have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiffs and the Class Members include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiffs' and Class Members' Private Information; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity; (d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their Private Information; (g) the diminution in the value of the services bargained for as Plaintiffs and Class Members were deprived of the data protection and security that Defendant promised when Plaintiffs and the proposed class entrusted Defendant with their Private Information; and (h) the continued and substantial risk to Plaintiffs' and Class Members' Private Information, which remains in the Defendant's possession with inadequate measures to protect it.

224.    Accordingly, Plaintiffs and the Class Members are entitled to damages in an amount to be determined at trial, including actual, consequential, and nominal damages, along with costs

and attorneys' fees incurred in this action.

**COUNT IIII**
**Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.***
**(On Behalf of Plaintiff and the Class)**

225.    Plaintiffs reallege paragraphs 1 through 171 as if fully set forth below.

226.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and state statutes described in this Complaint.

227.    Defendant owed a duty of care to Plaintiffs and Class Members, which required them to adequately monitor and safeguard Plaintiffs' and Class Members' Private Information.

228.    Defendant still possesses the Private Information belonging to Plaintiffs and Class Members.

229.    Plaintiffs allege that Defendant's data security measures remain inadequate. Furthermore, Plaintiffs continue to suffer injury as a result of the compromise of their Private Information and the risk remains that further compromises of their Private Information will occur in the future.

230.    Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

        a.    Defendant owe a legal duty to secure Plaintiffs' and Class Members' Private Information under the common law, HIPAA, the FTCA, and other state and federal laws and regulations, as set forth herein;

        b.    Defendant's existing data monitoring measures do not comply with its explicit or implicit contractual obligations and duties of care to provide

54

reasonable security procedures and practices that are appropriate to protect individuals' Private Information; and

      c.    Defendant continues to breach this legal duty by failing to employ reasonable measures to secure Plaintiffs' and Class Members' Private Information.

231.    This Court should also issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with legal and industry standards to protect members' Private Information, including the following:

      a.    Order Defendant to provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

      b.    Order that, to comply with Defendant's explicit or implicit contractual obligations and duties of care, Defendant must implement and maintain reasonable security and monitoring measures, including, but not limited to:

      i.    prohibiting Defendant from engaging in the wrongful and unlawful acts alleged herein;

      ii.    requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

      iii.    requiring Defendant to delete and purge the Private Information of Plaintiffs and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

      iv.    requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity

of Plaintiffs' and Class Members' Private Information;

v.      requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

vi.     prohibiting Defendant from maintaining Plaintiffs' and Class Members' Private Information on a cloud-based database until proper safeguards and processes are implemented;

vii.    requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

viii.   requiring Defendant to conduct regular database scanning and securing checks;

ix.     requiring Defendant to monitor ingress and egress of all network traffic;

x.      requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling Private Information, as well as protecting the Private Information of Plaintiffs and Class Members;

xi.     requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting

personal identifying information;

> xii.    requiring Defendant to implement, maintain, review, and revise as necessary a threat management program to appropriately monitor Defendant's networks for internal and external threats, and assess whether monitoring tools are properly configured, tested, and updated; and

> xiii.    requiring Defendant to meaningfully educate all Class Members about the threats that it faces because of the loss of its confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

232.    If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach of Defendant's systems. The risk of another such breach is real, immediate, and substantial. If another breach occurs, Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

233.    The hardship to Plaintiffs and the Class if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. The cost of Defendant's compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal duty to employ such measures.

234.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach of Defendant's systems and network, thus preventing future injury to Plaintiffs and other members whose Private Information would be further compromised.

235.    Following the issuance of the declaratory relief requested herein, pursuant to 28

U.S.C. § 2202, Plaintiffs and the Class will seek any further necessary or proper relief, including damages, after reasonable notice and hearing, against Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs John Cunningham and Lisa Capps, individually and on behalf of all others similarly situated, prays for judgment as follows:

A.     Certifying this case as a class action on behalf of Plaintiffs and the proposed  Class, appointing Plaintiffs as class representatives, and appointing their counsel  to represent the Class;

B.     Awarding declaratory and other equitable relief as is  necessary to  protect the interests of Plaintiffs and the Class;

C.     Awarding injunctive relief as is necessary to protect the interests of Plaintiffs and the Class;

D.     Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen Private Information;

E.     Awarding Plaintiffs and the Class damages that include applicable compensatory, exemplary, and statutory damages, as allowed by law;

F.     Awarding restitution and damages to Plaintiffs and the Class in an amount to be determined at trial;

G.     Awarding attorneys' fees and costs, as allowed by law;

H.     Awarding prejudgment and post-judgment interest, as provided by law;

I.     Granting Plaintiffs and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.      Granting such other or further relief as may be appropriate under the circumstances.

## JURY TRIAL DEMAND

Plaintiffs  hereby demand a trial by jury of all issues so triable.

Dated: July 14, 2025                    Respectfully submitted,

By: *s/ Jeff Ostrow*
Jeff Ostrow (FBN 121452)
Jonathan M. Streisfeld (FBN 117447)
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd, Suite 500
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
streisfeld@kolawyers.com
ostrow@kolawyers.com

Mariya Weekes FBN 56299
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2ND Floor
Coral Gables, FL 33134
Telephone: (786) 879-8200
mweekes@milberg.com

*Interim Co-Lead Counsel*