UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

*In re Food for the Poor, Inc.,*
  *Data Breach Litigation*   CASE NO: 0:25-CV-60973-RS

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEEFENDANT'S MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Plaintiffs John Cunningham and Lisa Capps ("Plaintiffs") hereby respond in opposition to Defendant Food for the Poor's ("Defendant") Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint ("Motion" or "MTD"). ECF No. 22.

I.   **INTRODUCTION**

This case arises out of Defendant's failure to implement reasonable, industry-standard cybersecurity safeguards to protect against the ubiquitous threat of a data breach, where it was entrusted by its current and former employees, family members of employees, and individuals who made donations with their personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information"). Defendant knows its business and knows that its employees and donors rely on it to keep confidential data secure. Nevertheless, Defendant failed to prepare and failed to develop and test reasonable cybersecurity incident response plans, business continuity plans, and disaster recovery plans. Defendant's failures also make clear that it likely lacked appropriate technical safeguards to monitor malicious activity and alert its staff about intrusion taking place. Because of these failures, Plaintiffs and the proposed Class Members have suffered substantial injuries, including misuse of their information and privacy harms, and now must face a substantially increased risk of identity theft and financial fraud for their lifetimes.

Notwithstanding its clear failures and Plaintiffs' clear allegations of harm, Defendant

1

argues Plaintiffs have not sufficiently stated their claims, including as to injuries traceable to the data breach. The Court should reject Defendant's arguments, where, as set forth below, Plaintiffs' allegations are sufficient to substantially survive dismissal under the standards articulated repeatedly by Courts in this circuit in other data breach cases, including *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1198 (S.D. Fla. 2022) ("*Mednax I*"), and most recently *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 749 F. Supp. 3d 1240, 1256 (S.D. Fla. 2024) ("*Fortra*").

## II.   STATEMENT OF FACTS

Defendant is a charitable organization engaged in the collection and distribution of money, food, clothing, medicine, and other goods to improve the health, economics, and social conditions of indigent poverty throughout the world. Consolidated Class Action Complaint ("CAC"), ECF No. 20, ¶ 3. Plaintiffs and Class Members are current and former employees, family members of employees, or individuals who made donations to Defendant who, in order to obtain and facilitate employment benefit programs from Defendant or to make charitable donations to Defendant, were and are required to entrust Defendant with their sensitive, non-public Private Information. Defendant could not perform its operations or provide its services without collecting Plaintiffs' and Class Members' Private Information. *Id.* ¶ 4.

On September 6, 2024, Defendant discovered unusual activity on its network. The ensuing investigation revealed that during the event an unknown, unidentified hacker accessed and exfiltrated files containing Plaintiffs' and Class Members' Private Information from Defendant's network systems. *Id.* ¶ 9. Specifically, the Private Information of Plaintiffs and Class Members exposed in the Data Breach includes: their names, Social Security numbers, passport numbers, and financial account number/information. *Id.* ¶¶ 141, 153. Although the Data Breach took place on or

about September 2, 2024, through September 6, 2024, Defendant failed to notify affected individuals that their Private Information was compromised until approximately April 4, 2025 (seven months)—diminishing Plaintiffs' and Class Members' ability to timely and thoroughly mitigate and address the increased, imminent risk of identity theft and other harms the Data Breach caused. *Id.* ¶ 10.

Plaintiffs and Class Members now face an ongoing risk of identity theft because their Private Information—including Social Security numbers, which are very difficult to change, and medical information, which cannot be changed as it is true information about the individual—is in the hands of criminal actors and, on information and belief, already on the dark web. *Id.* ¶¶144, 156. Critically, the Private Information of Plaintiff Cunningham has been published on the dark web following the Data Breach, according to commercially available products. *Id* ¶144. In response to the Data Breach, Plaintiffs made reasonable efforts to mitigate the impact, resulting in lost and unrecoverable time. *Id.* ¶¶ 142, 154. As a result of the Data Breach, the Private Information of Plaintiff Cunningham has already been misused and exploited for actual fraud. *See id.* ¶¶ 144-45 (contact by personal loan and car lenders for applications he did not make, attempted unauthorized access to a financial account from an IP address in Germany, necessitating the closure of the account). Moreover, Plaintiffs have experienced a significant increase in fraudulent or scam calls, texts, and/or emails since the Data Breach. *Id.* ¶ 146. Further, Plaintiffs have significant worry and feelings of anxiety and emotional distress over their personal financial security and uncertainty over what information was revealed in the Data Breach. *See id.* ¶¶ 148, 157.

Through this case, Plaintiffs seek to certify a nationwide class of all individuals whose Private Information was compromised in the Data Breach. *Id.* ¶ 158. The nationwide class alleges

common law claims against Defendant, including negligence, breach of implied contract, and declaratory judgment. *Id.* ¶¶ 172-235. Plaintiffs allege Defendant failed to adopt and implement reasonable measures to safeguard its employees and donors Private Information and knowingly failed to take necessary steps to prevent unauthorized disclosure of that information, among other things. *See id.* ¶¶ 189, 195, 199.

Defendant moved to dismiss the CAC, asserting Plaintiffs fail to state a claim on each of their causes of action. ECF No. 22. As set forth below, Defendant's Motion should be denied.

### III. ARGUMENT

#### A. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering a motion to dismiss, the Court accepts all the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Recognizing that "data breach cases present unique challenges for plaintiffs at the pleading stage," due to the information asymmetry with the Defendant whose data was breached, Plaintiffs have met their pleading burden and the Motion to dismiss should be denied. *Ramirez v.*

*Paradies Shops, LLC*, 69 F.4th 1213, 1220–21 (11th Cir. 2023). None of the claims alleged require Fed. R. Civ. P. 9(b) specificity in pleading.

Defendant is off base in labeling any of Plaintiffs' allegations "conclusory," because they are specific assertions of "fact that [are] either true or false, no matter what legal conclusions [they] may or may not support." *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1197 (11th Cir. 2018). The "only sense" in which these allegations are "conclusory" is that the "complaint does not itself prove" the allegations. *Id*. "But no part of the *Twombly-Iqbal* pleading standard requires a plaintiff to provide evidence for the factual allegations in a complaint before they are 'entitled to the assumption of truth' at the motion-to-dismiss stage." *Id.* (quoting *Iqbal*, 556 U.S. at 679). And the plausibility standard itself "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of Defendants' liability. *Twombly*, 550 U.S. at 556.

### B.     Plaintiffs Allege a Valid Negligence Claim

Plaintiffs' negligence claim is well-pled. The elements of a negligence claim under Florida law are (1) a duty recognized by law; (2) a breach of that duty; (3) proximate causation; and (4) damages. *Serrano v. Dickinson*, 363 So. 3d 162, 165 (Fla. 4th DCA 2023) (citing *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003)). Defendant does not challenge Plaintiffs' allegations of Defendant's duties and breach of duties. Plaintiffs sufficiently allege Defendant was negligent in failing to protect Plaintiffs' Private Information from exfiltration and dissemination, and that Plaintiffs suffered damages that are the proximate result of Defendant's negligence.

Defendant's argument throughout its motion that Plaintiffs failed to prove, establish, or demonstrate actual harm or cognizable injury is very premature and inconsistent with the standard for deciding a motion to dismiss. *Krukever v. TD Ameritrade, Inc.*, 337 F. Supp. 3d 1227, 1233

(S.D. Fla. 2018) ("On a Rule 12(b)(6) motion to dismiss, a court does not reach the merits of the suit, only the sufficiency of the complaint."). Plaintiffs' allegations unquestionably exceed the Eleventh Circuit's data breach cases recently addressed in *Ramirez*, 69 F.4th at 1220–21. Recognizing that "data breach cases present unique challenges for plaintiffs at the pleading stage," due to the information asymmetry with defendants, the court held that it *"cannot expect a plaintiff . . . to plead with exacting detail every aspect of Paradies's security history and procedures that might make a data breach foreseeable." Id.* (emphasis added). Thus, Defendant's insistence for even more specificity should be rejected, especially when Defendant's motion is couched at what Plaintiffs can prove. *See Rodriguez v. Mena Hosp. Comm'n*, 2023 WL 7198441, at *5 (W.D. Ark. Nov. 1, 2023) (rejecting requirement to plead "with specificity how [the defendant] breached its duty" and citing *Ramirez*). Though Defendants deny their liability for the Plaintiffs' and putative class members' damages, that is for the later merits stage.

> **1. Plaintiffs sufficiently allege actual damages to support their negligence claim.**

Here, consistent with Eleventh Circuit precedent, Plaintiffs sufficiently alleged the actual damage they have suffered as a result of Defendant's negligence. Plaintiffs allege they have suffered injuries including one or more of the following:

> (a) actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; (b) the loss of the value of their privacy and the confidentiality of the stolen Private Information; (c) the illegal sale of the compromised Private Information on the black market; (d) the present and continuing threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; (e) mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; (f) the time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; (g) the expenses incurred and time spent initiating fraud alerts; (h) the resulting decrease in credit scores and ratings; (i) their lost work time; (j) the lost value of the Private Information; (k) the lost value of access to their Private Information permitted by Defendant; (l) the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Defendant's Data

6

>Breach; (m) lost benefit of their bargains and overcharges for services or products; and (n) the nominal and general damages and other economic and non-economic harm suffered.

CAC ¶ 204. Plaintiffs note the above quote includes nominal damages, which are recoverable for negligence in Florida. *H & U Foods, Inc. v. Ellison*, 439 So. 2d 923, 924 (Fla. 4th DCA 1983), ("[c]ompensatory damages include both actual and nominal damages."); *see also Stevens v. Cricket Club Condo., Inc.*, 784 So. 2d 517, 519 (Fla. 3d DCA 2001).

Damages require a showing of "some actual harm." *See Mednax I*, 603 F. Supp. 3d at 1223-24 (quoting *In re Brinker Data Incident Litig.*, No. 3:18-cv-686-J-32MCR, 2020 WL 691848, at *8 (M.D. Fla. Jan. 27, 2020)). In data breach cases, (i) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of PII and PHI; (ii) time spent dealing with the consequences of the data breach; or (iii) a substantially increased risk of fraud and identity theft all constitute "some actual harm" sufficient for a Florida negligence claim. *See, e.g.*, *Mednax I*, at 1204-05; *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1184-87 (M.D. Fla. 2022). *See also Gilbert v. BioPlus Specialty Pharmacy Servs., LLC*, No. 6:21-cv-2158-RBD-DCI, 2023 WL 3555006, at *2 (M.D. Fla. Mar. 3, 2023) ("Mitigation expenses, time spent responding to the breach, and the like establish actual harm [under Florida law]."). And in *Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012), the Eleventh Circuit recognized that "spend[ing] money [to] plac[e] alerts with various credit reporting companies and [to] contest[ ] the fraudulent charges made in her name"; having to spend money on an "identity theft protection service"; being "forced to miss work and incur significant lost wages in order to spend time meeting with the police to report and attempt to remedy the effects of the AvMed data breach"; and "spen[ding] money on a variety of out-of-pocket costs—including, but not limited to, travel-related costs, cellular telephone minutes, postage, and credit monitoring services—to get

7

fraudulent charges removed from her credit" were all cognizable injuries under Florida law. *Resnick*, 693 F.3d at 1324 (citing *Curry v. AvMed, Inc.*, Case No. 10-CV-24513 (S.D. Fla. Apr. 25, 2011)).

Here, consistent with Eleventh Circuit precedent, Plaintiffs allege they face an ongoing risk of identity theft because their Private Information, including Social Security numbers, are in the hands of criminal actors and already on the dark web. CAC ¶¶ 45, 53, 144. Moreover, Plaintiff Cunningham experienced identity theft following the Data Breach of the types that, as pled in the CAC, criminal actors use Social Security numbers to commit. *See id*. ¶¶ 144-45. Defendant is free to dispute Plaintiffs' damages, but that is a merits, not a pleading, issue.

Plaintiffs also each allege at least two other cognizable injuries: (i) emotional distress related to their increased risk of identity theft, *id.* ¶¶ 15, 96, 148, 157, 202, 223; and (ii) the increased time they spent and must continue to spend reviewing their financial information, *id.* ¶¶ 14, 118, 121, 142, 154, 204. Both injuries were correctly held to be cognizable in *Mednax I*, under the Supreme Court's standard articulated in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 434-437 (2021). *See also Sheffler v. Americold Realty Trust*, No. 1:21-cv-1075-TCB, 2024 WL 470250, at *4 (N.D. Ga. Jan. 16, 2024) (time spent dealing with consequences of breach and "anxiety and increased concerns" for loss of privacy were among sufficient allegations of injury to state negligence claims); *Farmer*, 582 F. Supp. 3d at 1186 (out-of-pocket expenses, time spent dealing with the consequences of the data breach, and increased risk of fraud and identity theft were "sufficient to plead that [plaintiff] incurred some actual harm as a result of the data breach") (cleaned up).

Defendant incorrectly relies on *Lincoln v. Fla. Gas Transmission Co. LLC*, 608 Fed. Appx. 721 (11th Cir. 2015). Unlike in Defendant's motion, in *Lincoln*, the motion to dismiss was granted

because plaintiff failed to allege facts giving rise to a duty. 608 F. App'x at 723. Defendant's duty to secure Plaintiff's Private Information is totally uncontested here. Moreover, Defendant has no basis to rely on *Lincoln* to prematurely argue Plaintiffs have no proof of actual loss or damages. As explained above, to survive a motion to dismiss, Plaintiffs must simply state a plausible claim for relief, not prove the merits of their case. *Iqbal*, 556 U.S. at 679. They do so in the CAC.

Defendant argues "enhanced risk of future harm, and accompanying self-imposed mitigation efforts, is not a present compensable injury," citing to *Eagle-Picher Indus., Inc. v. Cox*, 481 So. 2d 517, 520 (Fla. 3d DCA 1985), an appeal from a money judgment that discusses an irrelevant res judicata issue. Additionally, Defendant incorrectly points to *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332 (11th Cir. 2021), and *Baker v. Akumin Corp.*, No. 0:23-CV-62396, 2024 WL 1931480 (S.D. Fla. Apr. 16, 2024), to support its argument that future injuries are not cognizable. Both *Tsao* and *Baker* discuss the potential implications of a future injury when analyzing Article III standing. *Tsao*, 986 F.3d at 1344; *Baker*, 2024 WL 19314809 at *3. Neither case addresses whether allegations of recurring future threats of harm are sufficient to withstand a Rule 12(b)(6) motion to dismiss for a negligence claim. Moreover, contrary to Defendant's arguments, "specific economic damages" are not required to plead a cognizable injury. *See* MTD at 8; *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-J-32MCR, 2019 WL 3502993, at *4 (M.D. Fla. Aug. 1, 2019) ("The Eleventh Circuit, like the Supreme Court, has frequently found an injury in fact despite an absence of monetary harm."). *See also Green-Cooper v. Brinker Int'l, Inc.*, 73 F. 4th 883, 890 (11th Cir. 2023) (posting of financial and personal information on the dark web "establishes both a present injury . . . and a substantial risk of future injury—future misuse of personal information associated with the hacked credit card"). Therefore, the substantial risk of future harm alleged here, as well as the time and effort attempting to mitigate that risk, are

9

cognizable Data Breach injuries.

Plaintiffs allege that, to protect themselves from post-Data Breach identity theft, they spent time and/or money monitoring their credit and accounts for fraudulent activity. These mitigation efforts constitute injury-in-fact. The Eleventh Circuit clarified in *In re Equifax, Inc., Customer Data Sec. Breach Litig.* when it is appropriate to incur injuries "while mitigating a risk of harm, such as purchasing a credit freeze or spending time or effort to minimize a risk of identity theft." 362 F. Supp. 3d 1295, 1262 (N.D. Ga. 2019). It explained that an "assertion of wasted time and effort necessarily rises or falls along with this Court's determination of whether a risk of injury is a concrete harm[,]" and thus, "the time, money, and effort spent mitigating" a substantial risk of injury are also concrete injuries. *Id.* Moreover, the court explained that even plaintiffs who had not yet suffered any identity theft could state a concrete harm because "[t]he actual identity theft already suffered by some Plaintiffs further demonstrates the risk of identity theft all Plaintiffs face—though actual identity theft is by no means required when there is a sufficient risk of identity theft." *Id*. at 1262-63.

This Court in *Mednax I* and *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2022 WL 796367, at *4 (S.D. Fla. Mar. 15, 2022), reached the same correct conclusion. *Mednax I*, 603 F. Supp. 3d at 1204 (finding because plaintiffs alleged a substantial and imminent risk of future identity theft, including time spent reviewing their financial accounts, "are sufficiently concrete to establish injuries in fact"); *Desue*, 2022 WL 796367, at *4-5 (same).

Here, Plaintiffs allege they have diligently monitored their financial accounts. CAC ¶¶ 142-143, 154-155. Because the risk of harm here is an injury-in-fact, the allegations of lost time to mitigate harm are also sufficient. *Mednax I*, 603 F. Supp. 3d at 1263.

### 2. Plaintiffs Sufficiently Allege their Damages Were Proximately Caused by Defendant's Negligence.

Defendant's argument that Plaintiffs failed to show or prove causation is premature at the motion to dismiss stage. MTD at 9-11. Defendant's reliance on *IBP, Inc. v. Hady Enters.*, 267 F. Supp. 2d 1148, 1161 (N.D. Fla. 2002), is irrelevant to the motion at hand because it addresses the court's factual determinations following a trial. This is another example of Defendant confusing the Rule 12(b)(6) standard by arguing Plaintiffs must prove causation in the CAC, by citing *In re Chiquita Brand Int'l, Inc.*, 284 F. Supp. 3d 1284, 1310 (S.D. Fla. 2018), a summary judgment order addressing proving proximate cause. The portion of *Lipkin v. Norwegian Cruise Line Ltd.*, 93 F. Supp. 3d 1311, 1329 (S.D. Fla. 2015), on which Defendant relies, is also a summary judgment ruling.

Plaintiffs have plausibly alleged their injuries were proximately caused by the Data Breach to more than meet their pleading burden. The Eleventh Circuit has recognized that in a data breach setting, "proximate cause is supported not only by the temporal[] but also by the logical[] relationship between the two events." *Resnick*, 693 F.3d at 1324 (quoting *Stollenwerk, v. Tri-West Health Care Alliance*, 254 F. App'x 664, 668 (9th Cir. 2007)). In *Resnick*, the court found plaintiffs sufficiently alleged proximate cause by logically connecting the data breach to the alleged injuries. *Id.* at 1327. Here, Plaintiffs more than met their burden in alleging that their damages logically resulted from Defendant's negligent conduct and ultimately, the Data Breach. Defendant would have the Court, as a matter of law, make a causation determination and dismiss Plaintiffs' negligence claim. But under Florida law, it is well-settled that "[t]he circumstances under which a court may resolve the question of proximate cause as a matter of law are extremely limited." *LeMaster v. Glock*, 610 So. 2d 1336, 1338 (Fla. 1st DCA 1992). "[T]he question of whether defendant's negligence was the proximate cause of the injury," the Florida Supreme Court has

11

instructed, "is generally one for the jury unless reasonable men could not differ in their determination of that question." *Helman v. Seaboard Coast Line R.R. Co.*, 349 So. 2d 1187, 1189 (Fla. 1977). Therefore, "at the motion to dismiss stage, it is enough if one can reasonably infer actual and proximate causation for [a plaintiff's] injuries from [a defendant's] alleged [conduct]." *Marabella v. NCL (Bah.), Ltd.*, 437 F. Supp. 3d 1221, 1229 (S.D. Fla. 2020); *see also Keller v. Core-Mark Distributors, Inc.*, 2016 WL 11578759, at *2 (M.D. Fla. June 30, 2016) (proximate causation generally may be "reasonably inferred from stated facts."). "[T]o prove that a data breach caused identity theft, the pleadings must include allegations of a nexus between the two instances beyond allegations of time and sequence." *Resnick*, 693 F.3d at 1326. In this case, given the allegations in the CAC, a reasonable person could infer a nexus between the Data Breach and the alleged injuries. Plaintiffs will prove the nexus at the merits stage.

As to the timing and sequence of Plaintiffs damages, a reasonable person could infer that Plaintiffs damages, including the spam calls, banks issues, and dark web alerts occurred after the Data Breach. A plausible reading of the complaint reveals that Plaintiffs allege the damage incurred as a result of Defendant's negligent conduct and after the Data Breach occurred. CAC ¶¶ 144-46, 155-56.[1]

Plaintiffs allege injuries that are plausibly a direct and proximate result of the Data Breach because the type of information exposed in the Data Breach is the type of information that used to commit the kinds of identity fraud Plaintiffs suffered and risk suffering in the future. *See Resnick*, 693 F.3d at 1327 (in case involving "gaps of ten and fourteen months between [breach and alleged

---

[1] If, the Court believes the proximate cause allegations are insufficient, Plaintiffs easily add a few words to the allegations to more specifically allege the timing of the post-breach events that occurred, for example, the date on which Plaintiff Cunningham received the alert that his Private Information appeared on the dark web and when he was contacted by loan officers about applications he did not fill out. However, it should not be necessary to do so. Defendant is sufficiently on notice and can test the allegations in discovery.

identity theft]," finding "logical connection" sufficient to state causation where plaintiff alleged "the sensitive information on the stolen laptop was the same sensitive information used to steal Plaintiffs' identity"); *Mednax I*, at 1224 ("reasonable jury could find that these facts establish causation" from allegations similar to those in the CAC); *Equifax*, 362 F. Supp. 3d at 1318-19 (N.D. Ga. 2019) (finding plaintiffs sufficiently alleged the data breach proximately caused their injuries); *Stephens v. Availity, L.L.C.*, 2019 WL 13041330, at *5 (M.D. Fla. Oct. 1, 2019) (receiving phone calls because a plaintiff's PII has been exposed sufficiently demonstrates proximate cause to allege negligence in data breach action).

### 3. Plaintiff's Negligence Claim Is Not a Shotgun Pleading

Defendant mischaracterizes the common law negligence claim alleged in the CAC to conjure up its incorrect shotgun pleading argument. Plaintiffs have not alleged multiple claims in one count, as was the concern in *Weiland v. Palm Beach Cnty. Sheriff's Office,* 792 F.3d 1313, 1323 (11th Cir. 2015), cited by Defendant.

First, Plaintiffs are not alleging negligence *per se* within this claim. Instead, Plaintiffs solely allege a claim for common law negligence and include the breaches of Defendant's duties under the Federal Trade Commission Act as evidence of Defendant's negligence. CAC ¶ 189.[2] Although Plaintiffs did not plead a cause of action for negligence *per se*, "the Florida Supreme Court has noted that when a cause of action for negligence *per se* fails because the statute at issue does not expressly provide for one, a plaintiff still has a 'right to bring a common law negligence claim based upon the same allegations.'" *St. Cyr v. Flying J Inc.*, No. 3:06-cv-13-J-33TEM, 2006 WL 2175662, at *6 (M.D. Fla. July 31, 2006) (quoting *Villazon v. Prudential Health Care Plan,*

---

[2] Plaintiffs concede Defendant is not required to comply with the Health Insurance Portability and Accountability Act and Health Information Technology for Economic and Clinical Health Act. Reference to those laws in the CAC was inadvertent.

13

*Inc.*, 843 So. 2d 842, 852 (Fla. 2003)). Thus, Plaintiffs do not need to plead the claim separately. If they did, Defendant would argue there is no independent negligence *per se* claim that could be alleged under Florida law, citing precedent to that effect. *See*, *e.g.*, *Mednax I*, 603 F. Supp. 3d at 1225.

Defendant's shotgun pleading argument also incorrectly accuses Plaintiffs of incorporating a separate negligent training claim inside the negligence claim. Unlike the plaintiffs in *Desue*, the case Defendant cites, who included subclasses and pled multiple negligence counts (including a separate negligent supervision count) against multiple defendants, here Plaintiffs correctly and permissibly allege one negligence claim against a single Defendant identifying numerous ways in which Defendant failed to satisfy its negligence duty of care to Plaintiffs and putative class members. No doubt the existence of multiple defendants in *Desue* and the lack of clarity as to which defendant committed each negligent act drove the shotgun pleading ruling. That is no cause for concern here. Plaintiffs simply and plausibly allege that Defendant would have prevented the breach had its data security policies and procedures included properly training its cybersecurity personnel. CAC ¶¶ 46, 48, 88.

Defendant's reliance on *Reed v. Royal Caribbean Cruises, Ltd.*, No. 19-24668-CIV, 2021 WL 2592914, at *8 (S.D. Fla. Apr. 23, 2021), is wrong. Unlike here, the plaintiffs in *Reed* combined claims against a corporation and its employees, alleged eleven unique duties of care, and attempted to combine multiple claims for relief within its negligence count. Here, Plaintiffs claims are against a single Defendant. Properly read, the CAC alleges the bases of Defendant's duties not to be negligent, which need not be plead in separate counts, and then how Defendant breached those duties, without combining different causes of action. CAC ¶¶ 175-196. As explained by the Eleventh Circuit in *Ramirez*, "data breach cases present unique challenges for

plaintiffs at the pleading stage" that may lead to situations where plaintiffs are forced to allege abnormal duties of care for common law negligence claims. 69 F.4th at 1221. Defendant is free to factually disprove the breaches Plaintiffs allege occurred, but not at the motion to dismiss stage.

### C. Plaintiffs Sufficiently Plead their Breach of Implied Contract Claim.

Plaintiffs adequately plead an implied-in-fact contract in which Defendant agreed to safeguard Plaintiffs' Private Information. This Court has outlined the objective standard of mutual assent to an implied contract:

> A contract implied in fact is not put into promissory words with sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement . . . "[A] [c]ourt should determine and give to the alleged implied contract the effect which the parties, *as fair and reasonable* men, presumably would have agreed upon if, having in mind the possibility of the situation which has arisen, they had contracted expressly thereto."

*Boca Raton Reg'l Hosp. v. Celtic Ins. Co.*, 2020 WL 9458896, at *8 (S.D. Fla. Feb. 6, 2020) (citing *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 385-87 (Fla. 4th DCA 1997) (en banc)) (emphasis added).

In data breach cases in which employees' confidential data was disclosed to unauthorized third parties, courts have held that by requiring and obtaining the employees' PII as part of the employment relationship, the employer "evince[d] an implicit promise . . . to act reasonably to keep its employees' PII safe." *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. 2017) (quoting *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *9 (N.D. Cal. Sept. 14, 2016)) ("While TransPerfect may not have explicitly promised to protect PII from hackers in Plaintiffs' employment contracts, 'it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of Social Security numbers or other sensitive personal information would not imply the recipient's assent to protect the information sufficiently.'"). After all, "it is difficult to imagine how, in our day and age of data and identity theft, the mandatory

15

receipt of Social Security numbers or other sensitive personal information would not imply the recipient's assent to protect the information sufficiently." *Miller v. Syracuse Univ.*, 662 F. Supp. 3d 338, 366 (N.D.N.Y. 2023).

In *Cravens et al. v. Garda CL Southeast, Inc. et al.*, No. 24-CV-80400-RLR, 2024 WL 5058304, *9 (S.D. Fla. December 9, 2024), a case filed in this district, the motion to dismiss was denied, with the Court holding: "Plaintiffs sufficiently allege facts in support of their implied breach of contract claim. Plaintiffs allege that they accepted employment with Garda based on the 'reasonabl[e] underst[anding] that Garda would use adequate cybersecurity measures to protect the PII/PHI that Plaintiffs . . . were required to provide' as a condition of their employment". The finding of an implicit promise is buttressed when the employer has a privacy policy in place. *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 591 (N.D. Ill. 2022); *In re GE/CBPS Data Breach Litig.*, 2021 WL 3406374, at *15 (S.D.N.Y. Aug. 4, 2021) (same); *Mackey v. Belden, Inc.*, No. 4:21-CV-00149-JAR, 2021 WL 3363174, at *9 (E.D. Mo. Aug. 3, 2021) (plaintiff in an employee/employer data breach case "plausibly alleged the existence and breach of an implied-in-fact contract requiring [the employer] to adequately secure its employees' PII."). This court should follow suit.

Defendant relies upon *Brush v. Miami*, 238 F. Supp. 3d 1359 (S.D. Fla. 2017), but as demonstrated above, *Brush* cannot be reconciled with the Eleventh Circuit's holding in *Resnick*, which recognized a claim for breach of implied contract in the context of PII and PHI stolen in a health plan operator data breach. 693 F.3d at 1328. As explained in *Brinker*, "*Brush* focuses on the privacy requirements already imposed by federal law—i.e. HIPAA—and it fails to distinguish *Resnick* or discuss why it is not controlling." 2020 WL 691848, at *4–5 (citing *Brush*, 238 F. Supp.

3d at 1368–69).³ Unlike *Brush*, "[t]he majority of federal courts have held that the existence of an implied contract to safeguard customers' data could reasonably be found to exist between a merchant and customer when a customer uses a payment card to purchase goods and services." *Id.* at *4–5. If such a contract can be implied in a momentary payment transaction, surely it can be implied where employees entrust those intimate details of their personal and health information to an employer, as alleged here. *Mackey v. Belden, Inc.*, No. 4:21-CV-00149-JAR, 2021 WL 3363174, at *9 (E.D. Mo. August 3, 2021).

Similarly, Defendant's reliance on the decision in *Fortra* is not persuasive because the implied contract claim in that case is factually inapposite. The alleged implied contract centered around NationsBenefits who *"offered to provide services to its clients, which are Plaintiffs' and Class Members' health plan providers, in exchange for payment."* 749 F. Supp. 3d 1240, *1266. Unlike that indirect situation, here Defendants' current and former employees, family members of employees, and individuals who made donations were required to provide their Private Information as a condition of receiving employment and benefits or to make a donation.

Ultimately, the Court should conclude Plaintiffs plausibly allege Defendant knew, or should have known, that collecting and storing Plaintiffs' Private Information would lead a reasonable person to understand Defendant was agreeing to secure the Private Information. CAC ¶¶ 206-214. Plaintiffs have plausibly alleged that if their employment did not include adequate data security, they would never have provided their Private Information to Defendant, and thus an implied contract was formed. *Id.* ¶213. The same acts and omissions supporting the negligence claim also plausibly allege Defendant's breaches of the implied contract (a matter Defendant does

---

³ *Brush* was also criticized in *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 582 (N.D. Ill. 2020), aff'd as modified, 73 F.4th 502 (7th Cir. 2023), as one of the opinions that "lack in-depth analysis of the issue and are not binding on this court; as discussed below, the court concludes that HIPAA does not preempt a state common law claim like that asserted here by Mr. Dinerstein."

not contest). Finally, Plaintiffs' cognizable actual harm alleged for the negligence claim is also applicable to their implied contract claims.

### D. Plaintiffs Sufficiently Plead The Declaratory Relief Claim.

Defendant's Motion accurately identifies the elements of a claim under the Declaratory Judgment Act, 28 U.S.C. §2201, but as with its other claims, it offers a premature factual argument that Plaintiffs cannot prove the need for declaratory relief, or the corresponding injunctive relief. But Plaintiffs plausibly allege their imminent and substantial risk of harm and are entitled to seek declarations that Defendant owed them a legal duty to secure the Private Information, the existing data security measures do not comply with the legal duties of care, and that Defendant continues to breach its duties by the unreasonable security measures in place. CAC ¶ 230. That the Data Breach already occurred does not eliminate the need for the relief sought because, until facts are developed in discovery, it is unknown whether Defendant's post-Data Breach actions are sufficient to trust that they have protected the Private Information from another data security incident. If not, injunctive relief pursuant to 28 U.S.C. §2202, would be warranted. CAC ¶ 231.

Plaintiffs "allege that Defendant's data security measures remain inadequate. Furthermore, Plaintiffs continue to suffer injury as a result of the compromise of their Private Information and the risk remains that further compromises of their Private Information will occur in the future." CAC ¶229. Defendant seeks dismissal of this claim, arguing only that "Plaintiffs have not pled 'imminent and substantial' risk of harm." Mot. at 18. Contrary to Defendant's motion, it is alleged that the Private Information from the Data Breach is on the dark web. CAC ¶ 144. However, without injunctive relief Plaintiffs will suffer irreparable harm against being re-victimized through Defendant's inadequate cybersecurity practices. CAC ¶ 232.

Courts regularly refuse to dismiss requests for injunctive relief at the motion to dismiss

stage where plaintiffs face an immediate threat of further disclosure of their data that remains in the defendant's hands. *See A&M Gerber Chiropractic LLC v. Geico Gen. Ins. Co.*, 2017 WL 850177, at *3 (S.D. Fla. Mar. 3, 2017) (denying motion to dismiss declaratory judgment claims in a data breach); *In re Capital One Consumer Data Security Breach Litig.*, 488 F. Supp. 3d 374, 414-415 (E.D. Va. 2020) (declaratory relief viable where plaintiffs "plausibly alleged the continued inadequacy of Defendants' security measures"); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *31 (N.D. Cal. Aug. 30, 2017) (standing to seek injunctive relief where PII "remains in the hands of Defendants."). Thus, Plaintiffs' claims for declaratory and injunctive relief should proceed.

Finally, a declaratory action claim is not duplicative when it "would provide the plaintiff a form of relief unavailable under the breach of contract claim as well as the [negligence] claim." *Restless Media GmbH v. Johnson*, 704 F. Supp. 3d 1288, 1302 (S.D. Fla. 2023). As noted above, Plaintiffs seek forward looking remedies that would not be available from their negligence and implied contract claims. For example, Plaintiffs seek lifetime credit monitoring and identity theft insurance and the implementation of new security measures. CAC ¶ 231. Because such declarations and injunctions are "forward looking, and would preserve [P]laintiffs' rights in the future," they are "not duplicative" of the claims for negligence and breach of implied contract. *In re Unite Here Data Sec. Incident Litig.*, 740 F. Supp. 3d 364, 388 (S.D.N.Y. 2024); *Ocean's 11 Bar & Grill, Inc. v. Indem. Ins. Corp. of DC*, No. 11-61577-CIV-ALTONAGA/Simonton, 2011 WL 3843931, at *4 (S.D. Fla. Aug. 26, 2011) (declaratory relief not duplicative where it sought declaration as well as "injunction or specific performance").

### IV. CONCLUSION

Based on the foregoing, the Court should find that all of Plaintiffs' claims are well-pled and deny the motion to dismiss. Although Defendant seeks dismissal with prejudice, any of the claimed pleading deficiencies, if accepted by the Court, can easily be addressed by the filing of an amended pleading, which Plaintiffs seek leave to file, if necessary.

Dated: September 17, 2025.                                         Respectfully submitted,

| | |
|---|---|
| /s/ Jeff Ostrow<br>Jeff Ostrow (FBN 21452)<br>Jonathan M. Streisfeld (FBN 117447)<br>**KOPELOWITZ OSTROW**<br>**FERGUSON WEISELBERG GILBERT**<br>One West Las Olas Blvd., Suite 500<br>Fort Lauderdale, Florida 33301<br>Telephone: (954) 525-4100<br>Fax: (954) 525-4300<br>ostrow@kolawyers.com<br>streisfeld@kolawyers.com | Mariya Weekes (FBN 56299)<br>**MILBERG COLEMAN BRYSON**<br>**PHILLIPS GROSSMAN, PLLC**<br>201 Sevilla Avenue, 2nd Floor<br>Coral Gables, FL 33134<br>Telephone: (786) 879-8200<br>Fax: (786) 879-7520<br>mweekes@milberg.com |

*Interim Co-Lead Class Counsel*